McNAUGHTON et al. v. BEATTIE.

No. 23291. Dec. 21, 1937.

Rehearing Denied Jan. 25, 1938.

604

Stephen A. George and J. B. Moore, for plaintiffs in error.

Geo. N. Otey and Laurence E. Beattie, for defendant in error.

HURST, J. This action involves the validity of a resale tax deed conveying certain land in Carter county to Laurence E. Beattie, the defendant below. The plaintiffs are subsequent grantees of the original owner. The land was first sold in 1925 for payment of the 1924 delinquent taxes, and, as no one offered to bid, the treasurer bid it off in the name of the county. The owner did not redeem the property within two years and it was put up for resale on April 16, 1928. Again there was no bidder and the treasurer bid it off in the name of the chairman of the board of county commissioners, and issued a deed to him. The deed was recorded on May, 1928. On July 7, 1928, the chairman of the board of county commissioners, after advertising as required by law, sold the property to the defendant, who recorded his deed on July 9, 1928. There was an oil well on the land,

which had been producing since prior to 1924, and which was making five or six barrels per day at the time the deed was issued and about two and a half at the time of trial. Apparently, the production was accomplished by the plaintiffs as owners of the fee, for no severance of ownership by oil or gas lease or mineral deed appears from the record. The gross production tax on the oil thus produced was paid during the year 1924 and at all other times referred to herein.

In November, 1928, a short time after the tax deed was issued to him, the defendant went into possession of the land through a tenant, and about two years later, on July 10, 1930, this action was commenced by plaintiffs to recover said land on the theory that the tax deed and subsequent deeds are void.

Since more than one year had elapsed from the recording of defendant's tax deed and his entry into possession, the action is barred by the statute of limitations, unless the tax deed complained of is void on its face or for jurisdictional defects. Section 12763, O. S. 1931.

1. The resale tax deed under discussion is in the form prescribed by the State Examiner and Inspector, and it is contended that it is void on its face for the reason that the State Examiner is not authorized by statute to prescribe a brief form of tax deed stating conclusions rather than ultimate facts. But the deed was issued in 1928, and the same form has been held valid by this court in Hatchett v. Going, Co. Treas. (1926) 121 Okla. 25, 246 P. 1100, and Winters v. Birch (1934) 169 Okla. 237, 36 P. (2d) 907. The deed used in the instant case is identical to the one held valid in Hatchett v. Going, supra, except that the county is the purchaser at the sale herein. It is contended that the statute does not authorize such a deed where the county is the purchaser. But the form prescribed by the State Examiner and Inspector has also been held valid in such case in Fullerton v. Carlock (1937) 179 Okla. 230, 65 P. (2d) 464. The first two cases cited are also decisive of the contention that the form of the deed does not meet the requirements of section 9752, C. O. S. 1921 (sec. 12762, O. S. 1931). We, therefore, hold that the form of the deed used in the instant case is sufficient.

2. It is further contended that the failure to file the return of sale as required by section 9735, C. O. S. 1921 (sec. 12745, O. S. 1931), is a jurisdictional defect rendering the deed void. It is admitted that no

such return was made, but it is held in Jepeway v. Barrett (1933) 165 Okla. 220, 25 P. (2d) 661, that the deed is not thereby rendered void. Plaintiffs rely on several cases which were expressly overruled in the Jepeway Case.

3. It appears from the record that the treasurer failed to indorse on the tax receipts, issued before the resale, to the owners of the land, the amount of the delinquent taxes as required by section 12620, O. S. 1931. But it is held in the Jepeway Case, supra, that this does not render the tax deed void.

4. As a final proposition, it is contended that even if the tax deed is valid, it in no event operates as a conveyance of the oil, gas, or mineral rights in the land. The reason given is that plaintiffs paid the gross production tax on oil and gas produced from the land and that was in lieu of all other taxes, creating a separate taxable estate which cannot be included in a tax deed issued because of nonpayment of the ad valorem tax.

It appears from the record that the gross production taxes were in fact paid during the time of the delinquency in payment of the ad valorem tax. It is contended by the defendant, however, that, by virtue of section 9746, C. O. S. 1921, as amended by section 6, chap. 158, Sess. L. 1923, "such deed shall vest in the purchaser and grantee of said real estate an absolute and perfect title in fee simple to said land." It is contended that this has been construed to vest title in the purchaser free and clear from any former right of any owner, relying on Swan v. Kuehner (1931) 157 Okla. 37, 10 P. (2d) 707. To the same effect is Taylor v. Lawrence (1936) 176 Okla. 75, 54 P. (2d) 634.

But in Meriwether v. Lovett (1933) 166 Okla. 73, 26 P. (2d) 200, where the party who defaulted in payment of the ad valorem tax owned the surface rights only, and other parties owning mineral rights had paid the gross production tax on oil from producing wells on the premises, it was held that the district court properly enjoined the county treasurer from issuing and delivering a tax deed which would attempt to convey the mineral rights. Plaintiffs cite cases of similar import from other jurisdictions.

Defendant argues that the instant case is distinguishable in that here the surface and mineral rights were all owned by the same person, and the whole estate was united in the person against whom the taxes were assessed. But it will be noted from a careful reading of Meriwether v. Lovett, supra, that the reason for excepting the mineral rights from the contemplated tax deed was not because of the severance of the title, but because of the severance of the two estates for tax purposes, with the gross production tax becoming a substitute for an ad valorem tax on the mineral rights as long as oil or gas is being produced in sufficient quantities to warrant the payment of such tax.

In Carpenter v. Shaw (1929) 280 U. S. 363, 50 S. Ct. 121, 74 L. Ed. 478, and other cases cited in Meriwether v. Lovett, supra, it is pointed out that by the holding of the Supreme Court of the United States and of this court the gross production tax is not a tax on oil and gas severed from the realty, but is a tax upon the mineral rights in the land, and that it excludes the assessment of a tax on ad valorem basis on the mineral rights as long as oil or gas is being produced. It is further held in Kenoyer v. Board of Equalization, etc. (1928) 130 Okla. 3, 264 P. 891, that an added value for the purposes of taxation on an ad valorem basis should not be given land because of actual or prospective minerals beneath the surface, provided such minerals would be subject to gross production tax when extracted from the earth. This is said to apply as well where the undeveloped minerals remain the property of the owner of the surface as when they are separately owned.

The ultimate basis of a tax deed is a valid assessment and a lien. The lien can be no broader than the assessment, and the tax deed can be no broader than the lien. Consequently, when the mineral rights are excluded from the assessment of the ad valorem tax because of the payment of the gross production tax, they are excluded from the lien and cannot be conveyed by the tax deed. The fact that the title remains in the same person is immaterial. We, therefore, conclude that the severance of the estate for taxation purposes, when oil and gas is produced, is the reason for excluding the mineral rights in a resale tax deed, and the unity of the title in one party of the estates so severed cannot affect the rule promulgated in Meriwether v. Lovett, supra.

It must be clearly understood that this separate taxable estate in the mineral rights exists only during the time when production is obtained from the property and gross production tax levied and paid thereon. Although the language in Kenoyer v. Board of Equalization, etc., supra, might indicate

that the mineral rights are never subject to ad valorem tax, since they might be subject to gross production tax in the future, such was not the holding of the court. The facts therein disclose that minerals were being produced and a gross production tax was being paid during the period of time in question, and the holding therein must be limited to such facts. It is true that an added value cannot be given to property for its potential mineral wealth, when the minerals are not actually being extracted, because, as stated by Mr. Justice Kane, such would be merely a tax "upon the illimitable vista of hope"; nevertheless, before oil or gas is discovered, or after such production has ceased, the mineral rights are subject to ad valorem tax as real property of the owner of the land. (In re I. T. I. O. [1914] 43 Okla. 307, 142 P. 997.)

This view does not conflict with the holding of Swan v. Kuchner, supra, or Taylor v. Lawrence, supra, for the reason that title free and clear from any right of any former owner will vest in the purchaser at the tax sale, but subject to the mineral rights, when minerals are being extracted and gross production tax levied and paid.

We hold that the deeds involved in the instant case operate as a conveyance of the surface rights, but do not convey the oil and gas rights. The judgment is reversed, with directions to enter judgment in accordance with the views herein expressed.

OSBORN, C. J., BAYLESS, V. C. J., and PHELPS, GIBSON, and DAVISON, JJ., concur. RILEY, WELCH, and CORN, JJ., dissent.

WELCH, J. (dissenting). I agree with the conclusion that the tax deed is valid, but cannot agree with the rule of law stated in the fourth paragraph of the syllabus, nor with the reasoning in the majority opinion which is relied upon to restrict the estate conveyed by the deeds here involved.

I think the majority opinion and the rule therein stated is in direct conflict with our statute (section 9746, C. O. S. 1921, 12756 O. S. 1931, 68 Okla. St. Ann. 415) which in plain terms fixes the estate which passes by a valid tax deed, and is also in conflict with former expressions of this court in the following cases: Swan v. Kuehner, 157 Okla. 37, 10 P. (2d) 707; Taylor v. Lawrence, 176 Okla. 75, 54 P. (2d) 634.

And since the statute so plainly fixes the estate that shall pass by valid tax deed, I think this court exceeds its power in restricting the estate passing by a valid tax deed as is done by the majority opinion. While this court has the power and duty to construe ambiguous statutory provisions, it is my view that we have no duty but to follow an unambiguous provision of the statute.

We have heretofore cited and followed the statutes in the two decisions above cited. In Taylor v. Lawrence, supra, this court considered a title taken by the county at tax resale and thereafter conveyed by deed from the county commissioners as in the case at bar. In that case this court, speaking through Mr. Justice Corn, said:

"The title taken by Creek county under this resale deed was a virgin title comparable to a patent from the government, unaffected either for good or ill by anything pertaining to the former chain of title."

And the following rule was stated in paragraph 2 of the syllabus, to wit:

"The purchaser at a valid tax resale procures a title to the real estate from the government which is free and clear from any former right of any former owner of the real estate."

And after citing numerous decisions from other states, it was further said in the body of the opinion:

"There are no cases to be found taking any contrary view to that expressed above. This court is fully in accord with the rule therein as shown by the following language from Swan v. Kuehner, 157 Okla. 37, loc. cit. 47, 10 P. (2d) 716: "The purchaser at a valid tax resale procures a title from the government which is free and clear from any former right of any former owner of the real estate'."

The majority opinion relies principally upon the former decision in Meriwether v. Lovett, 166 Okla. 73, 26 P. (2d) 200. I do not find in that opinion any justification for the conclusion here reached. In that case Meriwether held a tax sale certificate which was issued and came into his hands by reason of the fact that the surface owner failed to pay his ad valorem taxes, while another person by proper conveyance owned the mineral rights and the land was producing oil. Meriwether sought a tax deed and served notices on the delinquent surface owner, and also upon the owner of the mineral rights. It was there held that Meriwether was not entitled to the tax deed as against the owner of the oil rights who had paid his gross production tax. However, it was strongly emphasized that the ownership of the mineral rights was separate from the ownership of the surface

or remaining fee title, and it was there apparent that to hold otherwise would result in grievously penalizing the owner of the oil rights for the default of another. While it was held in that case that the tax sale and tax deed would not pass title to the separately owned mineral rights, that rule was made to depend upon a situation of separate ownership as there existing. The rule in that case is stated in paragraph two of the syllabus which opens with these words:

"Where the surface of land and the mineral rights are separately owned and after discovery of oil or gas and while same are being produced therefrom. * * *"

The headnote to that decision prepared by the editorial staff for publication in the Pacific Reporter states the rule of that case in this language:

"Where surface of land and mineral rights are separately owned, tax deed issued pursuant to levy of ad valorem tax on land after discovery and production of oil or gas and payment of gross production tax does not convey mineral rights in land. (St. 1931, sec. 12434.)"

I think it is plain that the separate ownership existing there was the basis for the rule stated in Meriwether v. Lovett, supra, and that every one examining that decision for annotation or publication or for use as a precedent should be led to the same conclusion. There is no such separate ownership in the case at bar, and therefore it is my view that the rule of the Meriwether Case has no application.

Under the rule of the majority opinion the valid tax deed does not convey the fee-simple title as provided by statute, and it is not possible to ascertain from the county records what title is conveyed. The rule in the Meriwether Case, while restricting the estate conveyed by valid tax deed. yet leaves it possible for one to ascertain from the county records what title is conveyed by the deed, because the county records would disclose the separate ownership of the mineral rights.

In the instant case the one owner of both the land and the oil rights, by payment of a very small gross production tax on oil produced from one very small well, though delinquent in payment of the ad valorem tax on the entire tract of land involved, is permitted to restrict the estate conveyed by valid tax deed, contrary to express statute. I cannot agree that this is correct. I think a landowner who elects not to pay his tax, must suffer the full penalty exactly

provided for by statute. If a property owner will not bear his fair share of the cost of government by paying his ad valorem tax, then the person who does pay them in the manner provided by law is entitled to the benefits which are given him by specific statutory provisions, and it is my view that this opinion wrongfully deprives the deed holder of benefits which are so specifically given him by statute. I can find no justification for the majority opinion in the statutes or decisions cited, and therefore respectfully dissent.